JS-6

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:  (714) 850-1592

*Attorney for Plaintiffs*
INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER

HARRISON TEMBLADOR HUNGERFORD & JOHNSON
Sean Hungerford (Bar No. 200268)
        Email: shungerford@hthjlaw.com
980 9th Street, Suite 1400
Sacramento, California 95814
Telephone:  (916) 706-2845
Facsimile:   (916) 382-2845

*Attorney for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of ORANGE COUNTY COASTKEEPER; ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>                    Plaintiffs,<br>          vs.<br><br>MISSION CLAY PRODUCTS, LLC,  a California Limited Liability Company; MC INDUSTRIES, LLC, a California Limited Liability Company; MCP INDUSTRIES, INC., a California Corporation; BBG KRG INC., a California Corporation.<br><br>                    Defendants. | Case No. EDCV14-01286-AB (CWx)<br><br>[Proposed] **CONSENT DECREE AND DISMISSAL**<br><br>**Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiffs Orange County Coastkeeper and Inland Empire Waterkeeper ("Plaintiffs" or "Waterkeeper"), and Defendants Mission Clay Products, LLC, MC Industries, LLC, MCP Industries, Inc., and BBG KRG Inc. ("Defendants" or "MCP"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California;

**WHEREAS**, Waterkeeper is a program of Orange County Coastkeeper, with its office in Riverside, California;

**WHEREAS**, Plaintiffs are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Santa Ana River and Inland Empire area receiving waters;

**WHEREAS**, together, Orange County Coastkeeper and Waterkeeper have over 2,000 members who live and/or recreate in and around the Santa Ana River watershed;

**WHEREAS**, MCP operates a facility for structural clay manufacturing, which includes uncovered raw clay material storage, uncovered clay pipe storage, related materials handling and mining activity;

**WHEREAS**, Mission Clay Products, LLC, MC Industries, LLC, MCP Industries, LLC, and BBG KRG, Inc. are owners and/or operators of a structural clay manufacturing facility located at 23835 Temescal Canyon Road, Corona, California, 92883, and the associated mining area located at Assessor's Parcel Numbers 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, 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, and 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, hereinafter referred to by the Settling Parties as the "MCP Facility";

**WHEREAS**, on April 15, 2014, Plaintiffs sent Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Santa Ana Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the CWA, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations

*{00365131; 1}*

of Section 301(a) of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), 33 U.S.C. § 1311(a), and violations of California's Permit for Discharges of Stormwater Associated with Industrial Activities (National Pollution Discharge Elimination System General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ) (hereinafter "Storm Water Permit") at the MCP Facility;

WHEREAS, on June 24, 2014, Plaintiffs filed a complaint against Defendants in the United States District Court, Central District of California (Case No. EDCV14-01286-SJO (CWx)) alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the MCP Facility ("Complaint");

WHEREAS, on August 18, 2014, Plaintiff received a Notice of Electronic Filing through the CM/ECF system transferring this case to Judge André Birotte, Jr., consequently changing the case number to EDCV14-01286-AB (CWx).

WHEREAS, discharges from the MCP Facilities are regulated by the Storm Water Permit and the Clean Water Act;

WHEREAS, Plaintiffs allege Defendants to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the MCP Facility;

WHEREAS, Defendants deny all allegations in the Notice Letter and Complaint relating to the MCP Facility;

WHEREAS, Defendants have submitted documentation to Plaintiffs that the onsite infiltration basin that receives discharges from the MCP Facility is sized appropriately to receive storm water discharges from the MCP Facility up to or

exceeding the 85% Design Storm;[1]

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the MCP Facility is located within this District;

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.      Plaintiffs have standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.      AGENCY REVIEW OF CONSENT DECREE**

6.      Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final

---

[1] For purposes of this Settlement Agreement, "85% Design Storm" means the storm event whose total precipitation is less than or equal to eighty-five (85) percent of all 24-hour storms in an area on an annual basis.

signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by the Federal Agencies, as evidenced by written acknowledgement of receipt by the Federal Agencies or the certified return receipts, copies of which shall be provided to Defendants if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

## II.   EFFECTIVE DATE AND TERMINATION

7.      The term "Effective Date," as used in this Consent Decree, shall mean the last day for the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") to comment on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review and the Court enters the final Consent Decree, whichever occurs earlier.

8.      This Consent Decree shall terminate two (2) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding Defendants' compliance with this Consent Decree. In the event there is a pending motion to enforce the Consent Decree, the Consent Decree will terminate upon the earlier of (1) the Court's ruling on such motion if it resolves the dispute, or (2) thirty (30) days following the Parties' notice to the Court of agreement by the Parties that the dispute that is the subject of the pending motion has been fully resolved.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Storm Water Pollution Reduction Measures

#### a.   Definitions

9.      For the purposes of this Consent Decree, "Basin 1," means the sediment basin adjacent to the Clay Storage Area and the Main Building, as seen on the MCP Facility Site Map attached hereto as Exhibit A.

10.      For purposes of this Consent Decree, "Basin 2," means the sediment basin

along the northern border of MCP in the Pipe Storage Area that accepts storm water flows from the trench along the northern border of the property, as seen on the MCP Facility Site Map attached hereto as Exhibit A.

11.   For purposes of this Consent Decree, "Basin 3," means the sediment basin along the northern border of MCP in the Pipe Storage Area that is connected to Basin 2 via a clay pipe and operates as an overflow basin for Basin 2, as seen on the MCP Facility Site Map attached hereto as Exhibit A.

12.   For purposes of this Consent Decree, "Sampling Point No. 1" means the driveway entrance to the mine site at the mine entrance gate.

13.   For purposes of this Consent Decree, "Sample Point No. 2" means the discharge point draining the 12.5 acre tributary area identified as Basin 6A and 6B in the mine plan and is shown as "6" in Exhibit B.

14.   For purposes of this Consent Decree, "Sample Point No. 3" means the discharge point draining the 20 acre tributary area identified as Basin 2 in the mine plan and is shown as "2" in Exhibit B.

15.   For purposes of this Consent Decree, "trench drain" means a subsurface drain that captures runoff from impervious area and directs downgradient.

16.   For purposes of this Consent Decree, "Dirt Driveway" means the unimproved entrance to the northernmost Pipe Storage Area off Ben Garrett Road.

17.   For purposes of this Consent Decree, "85% Design Storm" means the storm event whose total precipitation is less than or equal to eighty-five (85) percent of all 24-hour storms in an area on an annual basis.

b.   **Clay Pipe Manufacturing Site**

18.   Defendants shall install "shaker plates" at the entrance of the Dirt Driveway, in the location indicated on the MCP Facility Site Map attached hereto as Exhibit A, by December 1, 2014.

19.   Defendant shall install a trench drain at the top of Ben Garrett Road by January 1, 2015. The trench drain will direct storm water to vegetated areas in the

*{00365131; 1}*

1  southeast quadrant of the MCP Facility.

2     20.     Defendants shall install steel plates at the top of Ben Garrett Road by

3  December 1, 2014.

4     21.     [DELETED]

5     22.     Defendants shall place straw wattles along slopes upgradient of Ben Garrett

6  Road at spacing of not more than every ten (10) feet by October 31, 2014.

7     23.     Defendants shall require all raw and manufactured materials to be stored

8  within basin catchments or areas that drain to vegetation.

9              c.  **Mining Site**

10    24.     Defendants shall complete construction of detention basins and erosion

11 control BMPs at the Mining Site by December 1, 2014, in accordance with the details

12 provided in Exhibit B attached hereto.  Thereafter, to the extent that Defendants intends

13 to modify the detention basins or erosion control BMPs during the term of this Consent

14 Decree to maintain compliance with the requirements of any government agency,

15 Defendants will provide Plaintiffs with a minimum of thirty (30) days' notice before

16 implementing such modifications.

17    25.     Defendants shall install a Storm Water Sampler by Nalgene to collect storm

18 water samples during the first hour of discharge at Sample Point No. 2 and Sample Point

19 No. 3 by December 1, 2014. The product information for the Storm Water Sampler by

20 Nalgene is attached hereto as Exhibit C.

21    26.     Defendants shall diligently file and pursue all required local agency

22 applications for permits for the best management practices ("BMPs") at the MCP

23 Facility, shall diligently pursue the procurement of contractors, labor, and materials to

24 complete all such BMPs by the required deadlines, and shall use their best efforts to meet

25 these deadlines.

26 **B.     Sampling at the MCP Facility**

27    27.     Defendants shall install a recording rain gauge capable of recording rainfall

28 to 0.01 inches at the MCP Facility within thirty (30) days of the Execution Date.

Defendants shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance, maintain records of rain data, and provide such records upon request by Waterkeeper.

### a. Sampling During Term of Consent Decree

28.     During the life of this Consent Decree, Defendants shall collect storm water samples from each discharge location at MCP. The discharge locations/stormwater outfalls for each MCP site will be identified in the site map, which must be included in the respective Facility's SWPPP and M&RP. Samples will be collected from at least four (4) storm events per Wet Season at each MCP Facility provided that rain events occur in sufficient number and volume, and timing during operating hours, to meet this requirement. Defendant must sample each of the discharge(s) from the first storm event of the year that produces a discharge. For the purposes of this Consent Decree, all discharges of storm water occurring during the Facility's operating hours[2]  must be sampled, or, if storm water is stored onsite prior to discharge, whenever storm water is released, whether during operating hours or not.

29.     Any failure to sample a discharge from each discharge location at the MCP Facility shall be documented and submitted to Waterkeeper within five (5) days of the date a sample could have been collected but was not. Failure to collect a sample from each discharge location at each MCP Facility pursuant to Paragraph 28 will constitute a violation of this Consent Decree.  If Defendants collect samples from less than four (4) storm events per Wet Season, Defendants can demonstrate to Plaintiff compliance with the Consent Decree by submittal of photographs of the discharge locations, rain fall data from the onsite rain gauge, or other appropriate documentation that non-sampled storm water events occurred outside the Facility's operating hours and/or did not result in an actual storm water discharge.

---

[2] The operating hours for the MCP Facility are Monday – Friday, 5:30 a.m. to 4:30 p.m.

30.     All samples collected pursuant to paragraph 28 shall be analyzed for the following parameters: total suspended solids (TSS), copper, lead, zinc, oil and grease (O&G), aluminum, iron, biochemical oxygen demand (BOD), chemical oxygen demand (COD), and pH.

b.  **Sampling Analysis and Reporting**

31.     Defendants shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree. When requesting analysis of storm water samples, Defendants shall select analytical limits such that, at a minimum, the method detection limits are below the EPA Benchmarks and applicable water quality standards.

32.     Defendants shall request that all sample analyses be reported to them within fifteen (15) days of laboratory receipt of the sample.

33.     Defendants shall request that results of all sample analyses for metals required by this Consent Decree be reported as both total and dissolved concentration levels.

34.     Defendants shall provide the complete laboratory results of all samples collected at the MCP Facility to Plaintiffs within fifteen (15) days of receiving the results.

35.     Where Defendants observe and/or sample a discharge at the MCP Facility, Defendants shall provide rain gauge data to Plaintiffs within twenty-one (21) days of the rain event producing the discharge.

**C.     Prohibition Against Discharges**

36.     Prohibition Against Discharges. Storm water shall not discharge from the MCP Facility in any manner during any storm in a manner inconsistent with the express terms of this Consent Decree.

**D.     Visual Observations**

37.     During the life of this Consent Decree, Defendants shall conduct visual

observations during every significant rain event[3] that occurs during normal scheduled operating hours of all infiltration areas and all discharges, if any, at the MCP Facility.

38.     Defendants shall record any pollutants, odors, discolorations, or other pollutant indicators observed during these visual observations and compare the results of these observations to any sampling analyses conducted at the same locations.

### E.     Monitoring and Reporting Program Revisions

39.     Within thirty (30) days of the Effective Date of this Consent Decree, Defendants shall revise their M&RP for the MCP Facility to incorporate all sampling, analysis, observation, and reporting requirements of this Consent Decree and the Storm Water Permit. The revised M&RP shall require that the samples collected from the Facility's storm water discharges pursuant to the Storm Water Permit are analyzed for the constituents identified in Table 1 in addition to any other constituents required by the Storm Water Permit.

40.     Defendants shall submit the revised M&RP for the MCP Facility to Plaintiffs for review and comment. Plaintiffs shall provide comments, if any, to Defendants relating to compliance with the terms of this Consent Decree and the Storm Water Permit within thirty (30) days of receipt of the M&RP. Defendants shall incorporate Plaintiffs' comments into the M&RP, or shall justify in writing why any comment was not incorporated within thirty (30) days of receiving comments. Any disputes over the adequacy of the revised M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

### F.     Storm Water Pollution Prevention Plan Revisions

41.     Within thirty (30) days of the Effective Date of this Consent Decree, Defendants shall revise the SWPPP for the MCP Facility to include all BMPs required by

---

[3] A significant rain event is defined by EPA as a rainfall event generating 0.1 inches or more of rainfall, which generally results in measurable discharges at a typical industrial facility.

the Consent Decree, plus all requirements of Section A of the Storm Water Permit, including but not limited to (1) current BMPs, (2) BMPs developed pursuant to this Consent Decree to control the discharge of pollutants from the Facility, (3) a description of all industrial activities, (4) corresponding potential pollutant sources for industrial activities, (5) a revised site map for each Facility, and (6) a description of the potential pollutants from each source.

42.    Within thirty (30) days of the Effective Date of this Consent Decree, Defendants shall submit the revised SWPPP for the MCP Facility to Plaintiffs for review and comment. Plaintiffs shall provide comments, if any, to Defendants relating to compliance with the terms of this Consent Decree and the Storm Water Permit within thirty (30) days of receipt of the SWPPP. Defendants shall incorporate Plaintiffs' comments into the SWPPP, or shall justify in writing why any comment was not incorporated within thirty (30) days of receiving comments. Any disputes over the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

43.    <u>Additional SWPPP Revisions</u>. Defendants shall revise the SWPPP for the MCP Facility if there are any material changes in the MCP Facility's operations, including, but not limited to, changes to storm water discharge point(s). These SWPPP revisions shall occur within sixty (60) days of the changes in operations.

44.    Defendants shall submit any revised SWPPP for the MCP Facility to Plaintiffs for review and comment within ten (10) days of the SWPPP revision. Plaintiffs shall provide comments, if any, to Defendants relating to compliance with the terms of this Consent Decree and the Storm Water Permit within thirty (30) days of receipt of any revised SWPPP. Defendants shall incorporate Plaintiffs' comments into any revised SWPPP, or shall justify in writing why any comment was not incorporated within thirty (30) days of receiving comments.

**G.    Employee Training**

45.    Within thirty (30) days of the Effective Date of this Consent Decree,

*{00365131; 1}*

Defendants shall develop and implement a training program, including any training materials needed for effective implementation of the training program, for the MCP Facility ("Training Program"). The Training Program shall ensure: (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree at the MCP Facility, and (2) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree. At a minimum, the Training Program shall require the following:

a. <u>Language</u>. Defendants shall conduct the Training Program in the language or languages in which all employees participating are fluent;

b. <u>Non-Stormwater Discharge Training</u>. Defendants shall train all employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges;

c. <u>BMP Training</u>. Defendants shall train all employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the MCP Facility;

d. <u>Storm Water Sampling Training</u>. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree. The Training Program shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

e. <u>Visual Observation Training</u>. The Defendants shall provide training to all individuals performing visual observations at the MCP Facilities regarding visual observations pursuant to this Consent Decree and the Storm Water Permit.

*{00365131; 1}*

46.     The Training Program shall be provided by a private consultant or a representative of Defendants who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated annually, or as necessary to ensure that all employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the MCP Facility's SWPPP. All new staff will receive this training before assuming responsibilities for implementing the SWPPP or M&RP.

47.     Defendants shall maintain records of the subject matter and attendance to document compliance with this section, and shall provide Plaintiffs with a copy of these records within fourteen (14) days of receipt of a written request.

**H.     Site Inspections, Compliance Monitoring and Reporting**

48.     <u>Site Inspections</u>. Every year during the life of this Consent Decree, Plaintiffs and their representatives may conduct one (1) Wet Season (October 1 – May 30) site inspection and one (1) Dry Season (June 1 – September 30) site inspection at the MCP Facility. The site inspections shall occur during normal business hours. Plaintiffs shall provide Defendants with twenty-four (24) hours' notice (weekends and holidays excluded) prior to each Wet Season site inspection, and forty-eight (48) hours' notice (weekends and holidays excluded) prior to each Dry Season site inspection. Notice shall be provided by telephone or electronic mail.

49.     <u>Scope of Inspections.</u> During the site inspections, Plaintiffs and/or their representatives shall be allowed access to the MCP Facility's SWPPP, M&RP, plus all other monitoring records, reports, and sampling data related to compliance with the Storm Water Permit and/or this Consent Decree.

50.     During the site inspections, Plaintiffs and/or their representatives may collect samples of storm water or non-stormwater discharges and samples from any infiltration galleries at the Facility. At Plaintiffs' expense, a certified California laboratory shall analyze samples collected by Plaintiffs and copies of the laboratory reports shall be provided to Defendants within five (5) business days of receipt. At the

*{00365131; 1}*

request of Defendants, the samples shall be split and one half provided to Defendants so as to allow Defendants to have their own certified California laboratory analyze the samples, in accordance with the sample analyses requirements in paragraphs 32-36.

51.     During the site inspections, Plaintiffs may take photographs or video recording of the MCP Facility. If Plaintiffs take any photographs and/or video recording, Plaintiffs shall provide Defendants with the photographs and/or video within fourteen (14) days after any written request by Defendants for such photographs and/or videos.

52.     <u>Reporting and Document Provision</u>. During the life of this Consent Decree, Defendants shall copy Plaintiffs on all documents related to water quality at the MCP Facility, including inspection reports, which are submitted to the EPA, the Regional Board, the State Board, Office of Mine Reclamation, State Mining and Geology Board, and/or any state or local agency, county, or municipality. Such reports and documents shall be provided to Plaintiffs on the date they are sent to the agencies, counties, and/or municipalities. Any correspondence related to Defendants' compliance with the Storm Water Permit or water quality received by Defendants from any regulatory agency, and/or any state or local agency, county, or municipality shall be provided to Plaintiffs within ten (10) days of receipt by Defendants.

53.     <u>Compliance Monitoring and Oversight</u>. Defendants agree to partially defray Waterkeeper's review of information and monitoring of compliance with this Consent Decree in the amount of Three Thousand Five Hundred Dollars ($3,500) per year, for the term of this Consent Decree, for a total of Seven Thousand Dollars ($7,000). The first of two equal payments shall be made within thirty (30) days of the Effective Date. The second payment shall be made on or before September 1, 2015. Each payment shall be made payable to: "Orange County Coastkeeper," and delivered by certified mail, overnight delivery, or wire transfer to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

**I. Environmental Mitigation Project, Reimbursement of Litigation Fees and Costs, and Stipulated Payments**

54. <u>Environmental Project</u>. Defendants agree to make a payment of Seventeen Thousand Five Hundred Dollars ($17,500) to the Rose Foundation for Communities and the Environment for projects that will reduce the impact of storm water pollution from industrial activities on the Southern California Bight and its tributaries. Payment shall be made on or before September 1, 2015, made payable to the "Rose Foundation for Communities and the Environment" delivered by certified mail, overnight delivery, or wire transfer, to the Rose Foundation for Communities and the Environment, Attention: Tim Little, 1970 Broadway, Suite 600, Oakland, California 94612-2218. A confirmation copy of the payment shall be sent to Waterkeeper.

55. <u>Reimbursement of Plaintiffs' Fees and Costs</u>. Defendants shall pay a total of Forty Five Thousand Seven Hundred Dollars ($45,700) to Plaintiffs to partially reimburse Plaintiffs for their investigation fees, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made within thirty (30) days of the Effective Date payable to "Orange County Coastkeeper" and delivered via certified check or wire transfer to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

56. <u>Stipulated Payment</u>. If Defendants fail to meet a deadline included within this Consent Decree, which imposes a definite requirement on Defendants to perform within a specified time period, that is unexcused by Plaintiffs, Defendants shall make a remediation payment of One Thousand Dollars ($1,000) to the Rose Foundation for Communities and the Environment to fund environmental project activities that will benefit the Southern California Bight and its tributaries. Payment shall be made within thirty (30) days of the missed deadline, payable to the "Rose Foundation for Communities and the Environment" and shall be delivered by certified mail, overnight delivery, or wire transfer to: Rose Foundation for Communities and the Environment, Attention: Tim Little, 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendants shall provide Waterkeeper with a copy of each such payment and all related

*{00365131; 1}*

correspondences at the time the payment is made.

## IV.   **DISPUTE RESOLUTION**

57.     This Court shall retain jurisdiction over this matter until the final termination date defined in paragraph 8 above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

58.     <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this section by notifying all other Settling Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

59.     If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

60.     The dispute resolution procedures set forth in paragraphs 59 and 60 shall govern all disputes arising under and/or relating to this Consent Decree.

61.     <u>Burden of Proof</u>. In the event of any disagreement or dispute between Plaintiff and Defendants over the necessity or appropriateness of implementing any particular BMP or set of BMPs, including in any informal or formal proceeding brought to enforce the terms of this Consent Decree, Defendants shall bear the burden of demonstrating that any BMPs, other than those BMPs identified in a SWPPP that has previously been provided to Plaintiffs for review and comment, collectively, constitute

*{00365131; 1}*

BAT/BCT for the Facility, or that they are in compliance with the terms of this Consent Decree. With the exception of BMPs identified in a SWPPP that has previously been provided to Plaintiffs for review and comment, Plaintiff shall not be required to prove that Defendant's BMPs do not constitute BAT/BCT.

62.  Enforcement Fees and Costs. Litigation costs and fees reasonably incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## V.  **MUTUAL RELEASE OF LIABILITY**

63.  Plaintiffs' Release. Upon the Effective Date of this Consent Decree, Plaintiffs, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives release all persons including, without limitation, Defendants (each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, and shareholders, and each of their contractors, partners, joint venturers, landlords, predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the Termination Date of this Consent Decree.

64.  Defendants' Release. Upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives release all persons including, without limitation, Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of

*{00365131; 1}*

attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to entry of this Consent Decree by the Court.

65.     Nothing in this Consent Decree limits or otherwise affects Plaintiffs' right to address or take any position that they deem necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendants' compliance with the Storm Water Permit or the Clean Water Act occurring or arising after entry of this Consent Decree by the Court but specifically excluding the discharges and all other matters addressed by this Consent Decree.

## VI.   <u>MISCELLANEOUS PROVISIONS</u>

66.     <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

67.     <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of God, war, fire, earthquake, windstorm, flood, or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due

*{00365131; 1}*

diligence has been unable to overcome the failure of performance. Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a.   If Defendants claim compliance was or is impossible, they shall notify Plaintiffs in writing within thirty (30) days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendants should have known of the event or circumstance by the exercise of reasonable diligence. If the deadline for compliance that Defendants will miss is within the thirty (30) day window that Defendants have to notify Plaintiffs of their noncompliance, Defendants shall notify Plaintiffs within three (3) days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendants should have known of the event or circumstance by the exercise of reasonable diligence, such that Defendants shall not notify Plaintiffs of the impossibility and/or Force Majeure after the Consent Decree deadline has already passed.

b.   The notice described in paragraph 70.a shall describe the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

c.   The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or issue in paragraph 68.a, despite the timely good faith efforts of Defendants, new deadlines shall be established.

d.   If Plaintiffs disagree with Defendants' notice of impossibility and/or Force

Majeure, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Section IV. In such proceeding, Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances

68.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

69.     The Settling Parties have participated jointly in the negotiation and drafting of this Consent Decree. In the event that an ambiguity or question of intent or interpretation arises, this Consent Decree shall be construed as if drafted jointly by the Settling Parties and no presumption or burden of proof shall arise favoring or disfavoring any Settling Party by virtue of the authorship of any of the provisions of this Consent Decree.

70.     Choice of Law. The laws of the State of California shall govern this Consent Decree, except to the extent inconsistent with any laws of the United States, in which case the laws of the United States shall govern.

71.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

72.     Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

If to Plaintiff:

Orange County Coastkeeper
Garry Brown, Executive Director
    garry@coastkeeper.org
Colin Kelly, Staff Attorney
    colin@coastkeeper.org

3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

If to Defendants:

Mission Clay Products, LLC
Attn: Ken Garrett, Operations Manager
23835 Temescal Canyon Road
Corona, California 92883

MC Industries, LLC
708 South Temescal St., Suite 101
Corona, California 92879

MCP Industries, Inc.
P.O. Box 1839
Corona, California 92878

BBG KRG, Inc.
P.O. Box 2406
Corona, California 92877

With Copies to:

Harrison, Temblador, Hungerford & Johnson
Attn: Sean Hungerford
980 9th Street
Suite 1400
Sacramento, California 95814

Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending the notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

73.    Effect of Consent Decree. Except as provided herein, Plaintiffs do not, by their consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to

{00365131; 1}

affect or limit in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

74.      <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one (1) original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

75.      <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

76.      <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

77.      <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

78.      <u>Authority</u>. The undersigned representatives for Plaintiffs and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

79.      The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

80.      The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By

*{00365131; 1}*

entering into this Consent Decree, Defendants do not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter or the Complaint.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

ORANGE COUNTY COASTKEEPER

Dated: <u>November 17</u>, 2014   By: ___ _____

Garry Brown, Executive Director

MISSION CLAY PRODUCTS, LLC
A California limited liability company

Dated: _____, 2014   By: _____

, President

BBG KRG, INC.
A California corporation

Dated: _____, 2014   By: _____

, President

MCP INDUSTRIES, INC.
A California corporation

Dated: _____, 2014   By: _____

, President

MC INDUSTRIES, LLC

A California Limited Liability Company

Dated: _____, 2014          By: _____
                                          , President


APPROVED AS TO FORM

                                      ORANGE COUNTY COASTKEEPER


Dated:    November 17, 2014           By: _____
                                      Colin Kelly
                                      Attorney for Plaintiffs

                                      HARRISON TEMBLADOR
                                      HUNGERFORD & JOHNSON


Dated: _____, 2014          By: _____
                                      Sean Hungerford
                                      Attorney for Defendants


**IT IS SO ORDERED.**


Date: January 29, 2015

                                      _____
                                      Honorable André Birotte Jr.
                                      United States District Court Judge
                                      for the Central District of California